EXHIBIT 1

Slip Copy                                              **Page 1**
**(Cite as: 2004 WL 1247813 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.

Charles T. PASCIUTI, Petitioner,
v.
Daryl DREW, in his capacity as Warden of the
Federal Correctional Institution
at Ray Brook, New York, Respondent.

No. 9:04-CV-043(LEK).

June 2, 2004.

Alan P. Caplan, Office of Alan P. Caplan, San
Francisco, CA, for Petitioner.

Charles E. Roberts, Office of the United States
Attorney, Syracuse, NY, for Respondent.

*MEMORANDUM--DECISION and ORDER*

KAHN, J.

## I. BACKGROUND

*1 Charles Pasciuti ("Pasciuti" or "Petitioner") is
serving a 180 month sentence as an inmate at the
Federal Correctional Institution at Ray Brook, New
York for his role in a conspiracy to distribute a
controlled substance. Petitioner has been
incarcerated since October 3, 1991, and his 15 year
sentence would expire on October 1, 2006. Applying
credit for good conduct time ("GCT") to Petitioner's
sentence, the Bureau of Prisons ("BOP") has set his
release date as October 26, 2004.

Pasciuti alleges that the BOP has incorrectly
calculated the amount of GCT to which he is entitled
under 18 U.S.C. § 3624(b). Pursuant to 28 U.S.C. §
2241, and after exhausting his administrative
remedies, Pasciuti filed the instant habeas petition,
asking the Court to alter BOP's GCT calculation and
order his release date to be set at July 11, 2004. In
addition to his filing a habeas petition, Petitioner has
also filed a motion for a preliminary injunction,
which requested similar relief, namely, his release
from Ray Brook on July 11, 2004. [FN1]

> FN1. As the Court will now address the merits of
> his habeas petition, in advance of the potential July
> 11, 2004 release date, the preliminary injunction
> motion that was filed on the same grounds is

denied and will not be separately addressed.

## II. DISCUSSION
(a) 18 U.S.C. § 3624(b)

BOP's calculation of GCT is based upon the
Congressional mandate in 18 U.S.C. § 3624(b)
which reads: [FN2]

> FN2. The statute has been amended during
> Petitioner's incarceration. The Court cites the
> statute as it appeared when Petitioner was first
> sentenced. The amendments did not alter the
> phraseology at issue here, nor do they in any way
> alter the Court's decision.

(b) Credit toward service of sentence for
satisfactory behavior.
(1) ... [A] prisoner who is serving a term of
imprisonment of more than 1 year ... shall receive
credit toward the service of his sentence, beyond
the time served, of up to 54 days at the end of
each year of his term of imprisonment, beginning
at the end of the first year of the term, unless
[BOP] determines that, during that year, he has
satisfactorily complied with ... institutional
regulations.... If the Bureau determines that,
during that year, the prisoner has not satisfactorily
complied with such institutional regulations, he
shall receive no such credit toward service of his
sentence or shall receive such lesser credit as
[BOP] determines to be appropriate. [BOP]'s
determination shall be made within fifteen days
after the end of each year of the sentence. Such
credit toward service of sentence vests at the time
it is received. Credit that has vested may not later
be withdrawn, and credit that has not been earned
may not later be granted. Credit for the last year
or portion of a year of the term of imprisonment
shall be prorated and credited within the last six
weeks of the sentence.

The parties construe this statute differently, which
forms the basis of the instant petition. Petitioner
contends that by using the phrase "term of
imprisonment", a legal term of art, in § 3624(b),
Congress intended to allot 54 days of GCT for each
year of an inmate's *sentence,* not merely the time he
has *served.* Therefore, Petitioner asserts that his
total GCT is calculated by multiplying his total
sentence of 15 years by 54, the number of days
GCT awarded under the statute for each "year of the
prisoner's term of imprisonment," which results in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

810 days of GCT and his release on July 11, 2004.

*2 BOP calculates Petitioner's GCT differently. At the end of each year of imprisonment, for his good conduct during that year of incarceration, BOP has awarded Petitioner 54 days of GCT. Therefore, as of October 1, 2004 he will have vested 648 days CGT--54 days for each of 12 years he has served. [FN3] After applying the credit of 648 GCT days to his 15 year sentence, on October 1, 2004, Petitioner will have less than one year remaining on his sentence. Petitioner will then be awarded GCT of 3 days, a prorated amount of GCT for the duration of his sentence which is less than a full year.

> FN3. This assumes BOP determines that Petitioner complied with institutional regulations from October 1, 2003--October 1, 2004, and is thus entitled to 54 days GCT in this year.

One district judge has explained the dispute as follows:
> [T]he pivotal clause in § 3624(b) is the one stating than an inmate may earn up to 54 days of good conduct time "at the end of each year of the prisoner's term of imprisonment." That clause raised the question whether the phrase "term of imprisonment" means "sentenced [sic] imposed" or "time served." If "term of imprisonment" refers to the sentence, an inmate's maximum potential good conduct time could be calculated by multiplying 54 days by the number of years in the sentence.... However, if a term of imprisonment is defined by the inmate's actual time served, the number of good time credits that could be earned would be reduced and a more complicated calculation would be required because an inmate that earns good time will not actually serve his full sentence.
> *White v. Scibana,* 2004 U.S. Dist. LEXIS 7257, * 6-7 (W.D.Wis. April 23, 2004).

Petitioner contends that allotting him 54 days for each year *served,* as opposed to each year of his imprisonment to which he was *sentenced,* has resulted in GCT of only 47 days per year, in violation of § 3624(b).  [FN4] Pasciuti asks this Court to hold that BOP's decision, that he be granted only 47 days of GCT, violated the Administrative Procedure Act ("APA"), 5 U.S.C. § § 551-559, because BOP did not merely interpret the statute, but rather made a unilateral "legislative" decision, which it cannot do.

> FN4. Petitioner continually refers to BOP's award of only 47 days of GCT per year. He arrives at this number by dividing 705 days of GCT that BOP contends he is entitled to, by Petitioner's full 15 year sentence, to render 47 days GCT per year.

Petitioner also contends that, even if BOP's determination did not violate the APA, the calculation method, published as BOP's Sentence Computation Manual and as BOP Program Statement 5880.28, is contrary to the clear and unambiguous intent of Congress expressed in § 3624(b), which measures GCT against the "term of imprisonment" and not the "time served."

(b) Administrative Procedure Act

Petitioner first alleges that the decision to award only 47 days GCT amounted to a legislative determination, rather than merely an interpretative one, and that as such, it must be subjected to the APA's notice and comment procedure. Because the BOP calculation formula did not pass through this procedure, Petitioner asks this Court to set it aside.

(1) *Legislative and Interpretive Rules*

A rule or decision which amounts to a legislative determination must be submitted to the APA's notice and comment procedural requirements. 5 U.S.C. § 553. However, an agency's interpretive decision is exempt from these procedures. 5 U.S.C. § 553(b)(A). Courts have had to delineate between "interpretive" and "legislative" rules, because the APA does not. *See, e.g., Sweet v. Sheahan,* 235 F.3d 80, 90 (2d Cir.2000). The Second Circuit has stated "that legislative rules are those that create new law, right, or duties, in what amounts to a legislative act." *N.Y. State Elec. & Gas. Corp. v. Saranac Power Partners L.P.,* 267 F.3d 128, 131 (2d Cir.2000) (internal quotations omitted). Interpretative rules, however, "do not create rights, but merely clarify an existing statute or regulation." *Id.* (internal quotations and citations omitted).

*3 BOP's decision on how to calculate GCT did not amount to a legislative determination. Rather, the BOP decision to award GCT was interpretative of § 3624(b), determining only *when* BOP must credit an inmate with his 54 days GCT.

In an effort to make BOP's calculation appear

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

legislative, Petitioner continually states that BOP has awarded him only 47 days of GCT per year, instead of the 54 days contemplated under the statute. Petitioner arrives at this number by dividing the number of GCT days that BOP will award him under the BOP calculation method, 705 days of GCT, by Petitioner's full 15 year sentence, to render 47 days GCT per year. Such a calculation makes it appear as though an inmate has been deprived of 7 days of GCT time each year, potentially indicating that a substantive right has been lost. However, this mischaracterizes the BOP calculation.

It is possible that, with credit of GCT, a prisoner will have been sentenced to years he will not be required serve. [FN5] But, § 3624(b) orders that GCT is credited only "at *the end of each year* of his term of imprisonment" (emphasis added). BOP's calculation adheres to this Congressional mandate. It does not award inmates 54 days of GCT for years included in their initial sentences which are not ultimately served, because the time for awarding those days, at the *end of the year* of imprisonment, never arises for those years that are not served. The basis of the BOP calculation is the language chosen by Congress in § 3624(b), which directs GCT credit to be given at the end of each year. Hence, the calculation is based on Congress' legislative decision, not the BOP's.

> FN5. For example, once an inmate has served 7 years, if he was awarded all of his possible 54 days of GCT at the completion of each year, his sentence is reduced by a total of 378 days. His 378 days of GCT means that he will be released before serving more than a full year of his sentence, and as such, will not receive 54 days of GCT for that year that he has not served.

(2) *28 C.F.R. 523.20*

Petitioner notes several regulations that were promulgated through the APA's notice and comment procedure and address the substance of Congress' mandate under § 3624(b), including 28 CFR 523 .20, published in the Federal Register at 62 FR 50786. This regulation specified that pursuant to 18 U.S.C. § 3624(b), BOP "shall award ... 54 days credit for each year *served* prorated when the time served by the inmate for the sentence during the year is less than a full year if the inmate has earned or is making satisfactory progress toward earning a

GED credential or high school diploma...." 28 C.F.R. 523.20 (emphasis added).

In *Pacheco-Camacho v. Hood*, 272 F.3d 1266 (9th Cir.2001), *cert. denied* 535 U.S. 1105, 122 S.Ct. 2313, 152 L.Ed.2d 1067 (2002), the Ninth Circuit relied partly on 28 C.F.R. 523.20, and the properly promulgated notice and comment procedure that preceded it, as a basis for upholding the BOP's determination that GCT be awarded on the basis of time *served*. Because this regulation was promulgated in accordance with the procedures of the APA and stated that 54 days of GCT would be awarded only for time served, the court applied Chevron deference and upheld the BOP interpretation as a reasonable interpretation of the statute.

Petitioner criticizes the Ninth Circuit's reliance on 28 C.F.R. 523.20, calling it a "very obscure and highly indirect reference" to the determination that GCT should be measured against time served, rather than sentence imposed. (Dkt. No. 1: petitioner's Memo. of Law at 17). Petitioner posits that this regulation, although properly promulgated, could not serve as a basis for awarding only 47 days of GCT because it was published more than five and a half years *after* publication and dissemination of Program Statement 5880.28, which first announced the BOP's GCT calculation method.

*4 Petitioner's criticism is inconsequential here. As explained above, the BOP's method of calculating GCT is interpretive of the statute and not a legislative determination, and therefore a regulation promulgated with the APA's notice and comment procedure was not required before the BOP could apply its GCT calculation method.

(c) Congressional intent in 18 U.S.C. § 3624(b)

Petitioner also claims that even if BOP did not violate the APA, its calculation method is contrary to the clear and unambiguous intent of Congress expressed in § 3624(b), and therefore it should be set aside. Petitioner's position is contrary to that of several courts. *See Brown v. Hemingway*, 53 Fed. Appx. 338 (6th Cir.2002) (unpublished decision), *Williams v. Lamanna*, 20 Fed. Appx. 360 (6th Cir.2001) (unpublished decision), *Martinez v. Wendt*, 2003 WL 22456808 (N.D.Tex.) (Mag. Report and Recommendation), *adopted by the*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*district court* 2003 WL 22724755 (N.D.Tex.2003) (all holding that the BOP's interpretation of § 3624(b) based on time served was reasonable).

A court accords substantial deference to an agency's interpretation of a statute it is entrusted to administer. *Brissett v. Ashcroft,* 363 F.3d 130, 133 (2d Cir.2004) (citing to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Diallo v. I.N.S.,* 232 F.3d 279, 285 (2d Cir.2000)). "In such circumstances, where the relevant statutory provision is silent or ambiguous, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* (citing *Sutherland v. Reno,* 228 F.3d 171, 174 (2d Cir.2000)).

### (1) *Ambiguity in 18 U.S.C. § 3624(b)*

Under *Chevron,* the Court must first determine whether the phrase "term of imprisonment" is ambiguous in the statute. Petitioner asserts that by using the phrase "term of imprisonment" in § 3624(b), the statute is not ambiguous because the phrase "has a well-established meaning--the period of time imposed in the sentencing court's judgment, and not actual time in custody." (Petitioner's memo at 30). Therefore, Petitioner asks this Court to hold that Congress' directive is clear--inmates must receive 54 days GCT for each year of their *sentence,* not of their *service* .

However, this contention is the exact opposite of the conclusion reached by the Ninth Circuit. In *Pacheco,* the court held that "term of imprisonment" is ambiguous and explained that "the language of section 3624(b) does not make clear whether the sentence imposed or the time served" should be the basis for awarding GCT. *Pacheco,* 272 F.3d at 1269 . The court then looked to the legislative history, which lent "additional support to the BOP's regulation." *Id.*

To dispute the Ninth Circuit's analysis, Petitioner relies on *White v. Scibana,* 2004 U.S.Dist. LEXIS 7257 (W.D.Wis.2004). In *White,* the court disagreed with *Pacheco,* and held that " § 3624(b) is unambiguous: 'term of imprisonment' means 'sentence imposed.' " *Id.* at *2. The court recognized that "term of imprisonment" is a "legal term of art that Congress has employed in dozens of

statutes ... Throughout these statutes, Congress has uniformly used 'term of imprisonment' as a synonym for 'sentence.' " *Id.* at *11. However, this Court disagrees with the *White* court's, and now Petitioner's analysis, as such reasoning focuses solely on the phrase "term of imprisonment."

**\*5** Accepting the rationale of Petitioner and the *White* court leads to an inconsistency in the statute. As explained above, if GCT was awarded based on the term of imprisonment imposed by the sentencing judge, an inmate may be awarded GCT for years on his initial sentence that he is not required to serve. However, BOP is then faced with a dilemma. The statute directs BOP to credit GCT at "the end of each year of the prisoner's term of imprisonment." § 3624(b). The question that arises is as follows: Because the statute requires BOP to award GCT at the *end* of a year of imprisonment, then when is that credit vested if a year of imprisonment is never actually served? [FN6]

> FN6. The question of when GCT vests is particularly important to this federal scheme, because it is only once GCT vests that it cannot be taken away. *See* 18 U.S.C. § 3624(b).

### (2) *Determination of whether BOP's interpretation of § 3624(b) is reasonable*

Having found that the phrase "term of imprisonment", as it is used in the statute, is ambiguous, the Court must next determine only whether BOP's interpretation "is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843; *Pacheco,* 272 F.3d at 1270. Deference is due to BOP even though its method of calculation is only expressed in a Program Statement and not in a promulgated regulation:
[T]he [BOP]'s interpretation is the most natural and reasonable reading of § 3585(b)'s "official detention" language. It is true that the [BOP]'s interpretation appears only in a "Program Statemen[t]"--an internal agency guideline--rather than in "published regulations subject to the rigors of the [APA], including public notice and comment." 21 F.3d at 562. But, BOP's internal agency guideline, which is akin to an "interpretive rule" that "do[es] not require notice and comment," *Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, 99, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995), is still entitled to some deference, cf. *Martin v. Occupational Safety and*

*Health Review Comm'n,* 499 U.S. 144, 157, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991), since it is a "permissible construction of the statute[.]" *Chevron,* 467 U.S. at 843.
*Reno v. Koray,* 515 U.S. 50, 60-61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995).

Although the phrase "term of imprisonment" is ambiguous as it is used in the statute, the overall directive of Congress is not easily disguised. *See id.* at 56. BOP's interpretation is not only reasonable, but is in fact the only logical one there is. The statute awards GCT based upon BOP's determination that "during that year" the prisoner complied with institutional disciplinary regulations. Such a directive requires that the prisoner has been incarcerated during that year so that his compliance may be measured. Therefore, granting GCT for years that will not be served is illogical, because compliance with disciplinary rules during those years is not possible.

Moreover, in *Pacheco,* the court explained why the inmate's position, the same one Petitioner now asserts, was unreasonable:

Instead of a prorated portion, Pacheco wants the entire fifty-four days of credit--even though he never served the full 365 days. Whereas the model prisoner will ordinarily receive his fifty-four-day credit after complying with prison disciplinary rules for 365 days, under Pacheco's reading, a prisoner who serves 311 days would receive the same number of credits for exhibiting good behavior over only eighty-five percent of the year. Pacheco's interpretation would therefore confer upon the prisoner a bonus during his last year of imprisonment. Nothing in the statute clearly suggests that Congress intended to give the prisoner such a windfall in his last year. *Id.* at 1268-69.

*6 BOP's determination reasonably interprets the Congressional mandate of § 3624(b). BOP's calculation affords inmates their full 54 days of GCT, credited at the end of every year, which results in no GCT credit for years of an inmate's sentence that are not served. Such an interpretation is reasonable, and perhaps inevitable, given the directive of § 3624(b) that GCT be credited "at the *end* of each year of the prisoner's term of imprisonment."

(3) *Rule of lenity does not apply*

Finally, Petitioner contends that the rule of lenity dictates that any statutory ambiguity must be resolved in his favor. (Dkt. No. 1: Petitioner's Memo. of Law at 38). He claims that, because his reading of the statute is more favorable to those incarcerated, it should prevail.

"The rule of lenity ensures that the penal laws will be sufficiently clear, so that individuals do not accidentally run afoul of them and courts do not impose prohibitions greater than the legislature intended." *Pacheco,* 272 F.3d at 1271 (citing *United States v. Bass,* 404 U.S. 336, 347-48, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)). "The rule 'applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." ' *Id.* (quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980).

As explained above, the phrase "term of imprisonment" is ambiguous in the statute at issue. While the phrase has become a legal term of art meaning "years of sentence", as used in other criminal statutes, this does not lend ambiguity to the entire statute. Rather, Congress' intent can be easily understood from the overall statutory scheme. *See Reno v. Koray,* 515 U.S. at 56 ("Viewing the phrase ["official detention"] in isolation, it may be said that either reading is plausible. But it is a fundamental principle of statutory construction (and, indeed, of the language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.") (internal citations and quotations omitted). Because inconsistencies would arise if "term of imprisonment" were read as "sentence", Congress could only have intended the phrase to be used to mean years that an inmate is actually imprisoned. Therefore, while there is ambiguity stemming from the meaning of one phrase in the statute, when viewed in its entirety, § 3624(b) is not ambiguous and the rule of lenity does not apply.

### III. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Pascuiti's motion for a preliminary injunction is DENIED; and it is further

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 1247813, *6 (N.D.N.Y.))

ORDERED that Pascuiti's petition pursuant to 28 U.S.C. § 2241 is DENIED and DISMISSED; and it is further

ORDERED that the Clerk serve a copy of this Order on all parties.

IT IS SO ORDERED.

2004 WL 1247813 (N.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 2

20 Fed.Appx. 360
(Cite as: 20 Fed.Appx. 360, 2001 WL 1136069 (6th Cir.(Ohio)))

Page 7

**H**

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Earlus L. WILLIAMS, Petitioner-Appellant,
v.
John LAMANNA, Warden, Respondent-Appellee.

No. 01-3198.

Sept. 19, 2001.

Federal prisoner, who was convicted of possession with intent to distribute cocaine and possession of firearm in relation to drug-trafficking offense, petitioned for habeas corpus relief. The District Court dismissed petition. Prisoner appealed. The Court of Appeals held that prisoner's good time credit was based on time actually served, not sentence imposed.

Affirmed.

West Headnotes

Prisons ⊖➡15(4)
310k15(4)

Under statute permitting inmate to be awarded 54 days of good time credit per year, credit was based on time actually served in prison by inmate, not time that he might potentially serve, and therefore inmate was not entitled to credit based on entire 19-year sentence imposed. 18 U.S.C.A. § 3624(b)(1).

**\*360** Before GUY and MOORE, Circuit Judges; HULL, District Judge. [FN\*]

FN\* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

*ORDER*

**\*\*1** Earlus L. Williams, a pro se federal prisoner, appeals a district court judgment dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 1991, Williams was convicted of possession with the intent to distribute cocaine and possession of a firearm in relation to a drug trafficking offense. He was sentenced to 228 months of imprisonment. Williams challenged the calculation of his good conduct time under 18 U.S.C. § 3624(b)(1). The district court dismissed the petition as meritless. In his timely appeal, Williams continues to challenge the calculation of his good conduct time.

The district court's judgment is reviewed de novo. *See Charles v. Chandler,* 180 F.3d 753, 755 (6th Cir.1999).

Upon review, we affirm the district court's judgment. Williams alleged the phrase "may receive credit toward the service of [his] sentence, beyond the time served" found in § 3624(b) should be interpreted to allow him good time conduct credits for the entirety of the sentence that was imposed upon him rather than for the actual time of incarceration. Williams claims that he is entitled to 1,026 days of good conduct time rather than the 894 days calculated by the Bureau of Prisons.

**\*361** Under § 3624(b), an inmate may be awarded 54 days of good time credit per year only "at the end of each year of the prisoner's term of imprisonment ... subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with the institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1); *see United States v. Martin,* 100 F.3d 46, 47 n. 1 (7th Cir.1996).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that might potentially be served by the inmate. The record shows that for each year that Williams has served, he has received 54 days of good conduct time, thus reducing the amount of time he will actually serve. Because the number of years that Williams actually serves will be less than the imposed nineteen-year sentence, Williams is not entitled to 1,026 days of good conduct time. The Bureau of Prisons correctly calculated Williams's good time conduct as 894 days based on the number of years he will in fact serve in prison, rather than on the imposed nineteen-year sentence.

Accordingly, we affirm the district court's judgment. Rule 34(j)(2)(C), Rules of the Sixth Circuit.

20 Fed.Appx. 360, 2001 WL 1136069 (6th Cir.(Ohio))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 3

53 Fed.Appx. 338                                                    **Page 1**
**(Cite as: 53 Fed.Appx. 338, 2002 WL 31845147 (6th Cir.(Mich.)))**
C

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Terrence M. BROWN, Petitioner-Appellant,
v.
John R. HEMINGWAY, Warden; John Ashcroft,
U.S. Attorney, Respondents-
Appellees.

No. 02-1948.

Dec. 16, 2002.

Before MERRITT and DAUGHTREY, Circuit Judges; and RUSSELL, District Judge. [FN*]

> FN* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

ORDER

**1 Terrence Brown, a pro se federal prisoner, appeals from a district court judgment denying Brown's petition for a writ of habeas corpus. 28 U.S.C. § 2241. Brown also moves for release pending appeal. The appeal has been referred to a panel of the court pursuant to Rule 34(j), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Brown challenges the Bureau of Prisons' calculation of his good time credit. Brown *339 argues that he should receive a credit of 15% of his 57 month sentence, or 259 days. The Bureau follows the language of the statute and grants 54 days of credit for each year actually served. *See* 18 U.S.C. § 3624(b)(1). Therefore, the Bureau will credit Brown with 233 days.

The district court held that the Bureau's interpretation of the statute was reasonable. The court relied upon a published Ninth Circuit case and an unpublished Sixth Circuit case. *See Pacheco-Camacho v. Hood,* 272 F.3d 1266, 1270-71 (9th Cir.2001), *cert. denied,* --- U.S. ----, 122 S.Ct. 2313, 152 L.Ed.2d 1067 (2002); *Williams v. Lamanna,* No. 01-3198, 2001 WL 1136069, at *1, 20 Fed.Appx. 360 (6th Cir. Sept.19, 2001) (unpub. dec.).

We conclude that the district court properly denied Brown's petition. *Pacheco-Camacho* and *Williams* are persuasive authority on this point. Brown refers to various Bureau regulations that utilize the 15% figure. But the language of the statute uses 54 days as the basis for credit, not the 15% figure. The Bureau's interpretation is reasonable in light of the statutory language.

Accordingly, the motion for release pending appeal is denied, and the district court's judgment is affirmed under Rule 34(j)(2)(C), Rules of the Sixth Circuit.

53 Fed.Appx. 338, 2002 WL 31845147 (6th Cir.(Mich.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 4

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22456808 (N.D.Tex.))

Page 9

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas, Dallas Division.

Anibal Cruz MARTINEZ, Petitioner,
v.
K.J. WENDT, Warden, Respondent.

No. 3:03-CV-0826-L.

Oct. 24, 2003.

John R. Parker, US Attorney's Office, Department
of Justice, Dallas, TX, for Respondent.

*FINDINGS, CONCLUSIONS, AND
RECCOMENDATION OF THE UNITED STATES
MAGISTRATE JUDGE*

SANDERSON, Magistrate J.

**\*1** Pursuant to the provisions of 28 U.S.C. § 636(b)
and a standing Order of the Court in implementation
thereof, the subject cause has previously been
referred to the United States Magistrate Judge. The
findings, conclusion, and recommendation of the
Magistrate Judge, as evidenced by his signature
thereto, are as follows:

*Statement of the Case:*

Petitioner is confined as an inmate of FCI
Seagonville, Texas serving a felony drug conviction
imposed by the United States District Court for the
District of New Mexico on March 6, 1998.
Respondent is the warden at FCI Seagonville.

*Findings and Conclusions:*

In his petition for writ of habeas corpus pursuant to
28 U.S.C. § 2241 Martinez challenges the Bureau of
Prisons's interpretation of 18 U.S.C. § 3624(b) as
implemented in 28 C.F.R. § 523.20.

As a preliminary matter, Respondent asserts that
the petition should be dismissed because Martinez
failed to exhaust his administrative remedies. A §
2241 petitioner is required to exhaust his
administrative remedies before seeking a writ in
federal court. *Rourke v. Thompson*, 11 F.3d 47, 49
(5th Cir.1993), *see also Fuller v. Rich*, 11 F.3d 61
(5th Cir.1994). In the instant case, Petitioner's
available administrative remedies are set out in 28
C.F .R. §§ 542.10 *et seq.*

Martinez does not dispute his failure to pursue these
remedies (*See generally,* Petitioner's Reply to
Government's Response, 1-4). However, he
contends that it is futile for him to pursue the
administrative remedies and that doing so would
create irreparable harm (Petitioner's Supplemental
Memorandum of Law, i and v-vi). Exceptions to the
exhaustion requirement exist when administrative
remedies are unavailable, inappropriate for the relief
sought, or where the attempt to exhaust the remedies
would be futile. These exceptions apply only in
extraordinary circumstances and a petitioner bears
the burden to demonstrate that administrative review
would be futile. *Fuller v. Rich*, 11 F.3d 61, 62 (5th
Cir.1994). Exhaustion of administrative remedies is
not a jurisdictional requirement in the context of a
28 U.S.C. § 2241 unrelated to civil rights issues.
*See Id.* Thus, where the court finds that Petitioner's
continued pursuit of administrative remedies would
be futile, it may excuse a Petitioner's failure to
exhaust and reach the merits of the claim. *See Id.;
see also Tasby v. Pratt,* 2002 WL 1160071 *2-3
(N.D.Tex.2002).

Petitioner's claim of futility is meritorious since it
is unlikely in the extreme that were he to pursue
additional administrative remedies the Bureau of
Prisons would grant relief in his individual case in
contravention to its own published regulations.
Moreover, since exhaustion of remedies in the
context of this § 2241 petition is not a jurisdictional
prerequisite, Martinez's petition should be decided
on the merits.

§ 3624(b)(1) reads, in pertinent part,
  Subject to paragraph (2), a prisoner who is serving
  a term of imprisonment of more than 1 year other
  than a term of imprisonment for the duration of
  the prisoner's life, may receive credit toward the
  service of the prisoner's sentence, beyond the time
  served, of up to 54 days at the end of each year of
  the prisoner's term of imprisonment, beginning at
  the end of the first year of the term, subject to
  determination by the Bureau of Prisons that,
  during that year, the prisoner has displayed
  exemplary      compliance      with      institutional

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22456808, *1 (N.D.Tex.))

disciplinary regulations ... Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

*2 Petitioner takes exception to the methodology of calculation used by the Bureau of Prisons in the partial year served at the completion of the sentence. Currently, the bureau uses the amount of time actually served by the prisoner for the computation of the amount of good conduct time (Respondent's Motion, Appendix. A). Petitioner argues that the Bureau of Prisons should calculate the maximum amount of good conduct time using the time imposed at the time of sentencing.

Although the Fifth Circuit has not addressed the issue raised by Martinez, the Ninth Circuit addressed it in *Pacheco-Camacho v. Hood,* 272 F.3d 1266 (9th Cir.2001). That court found that § 523.20 was entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) and that the Bureau of Prisons's interpretation of § 3624(b) was reasonable. *Pacheco-Camacho,* 272 F.3d 1266. Notwithstanding this decision, Petitioner contends that the Ninth Circuit made several errors in its legal analysis.

First, he claims that the court applied the *Chevron* doctrine in error. He asserts that § 3624 is a penal statute and therefore, if ambiguous, falls under the rule of lenity (Petitioner's Memorandum Brief in Support of Motion for Correction of Movant's Good Conduct Time Pursuant to Title 28 U.S.C. § 2241, 12-15 "Petitioner's Memorandum Brief"). The rule of lenity arises out of concern for individual rights and belief that defendants should be given fair warning as to what constitutes criminal conduct. *United States v. Marek,* 238 F.3d 310, 322 (5th Cir.2001). It applies in the very narrow ambit of criminal statutes and the penalties imposed for criminal conduct. *See Id.; see also United States v. John,* 309 F.3d 298, 301 (5th Cir.2002). Since § 3624(b) is not concerned with crimes and their punishment, nor does it trigger the correct concerns, it is not a penal statute for purposes of the rule of lenity. Therefore the *Chevron* doctrine applies, since § 3624 was adopted through the notice and comment procedure. *See, e.g., United States v. Mead Co.,* 533 U.S. 218, 227, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292(2001); *see also Pacheco-Camacho,* 272 F.3d at 1268, 1271.

Under the *Chevron* doctrine, a court must first determine if Congress has spoken on an issue in such a manner that their intent is clear. *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2778. If the court decides in the negative, it must then determine if the agency's interpretation "is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2778.

Petitioner contends that the plain language of the statute supports his computational methodology (Petitioner's Memorandum Brief, 3-7). "Term of imprisonment," he says, is clearly different from "time served" (Petitioner's Memorandum Brief, 3). He cites *United States v. Morales-Alejo,* 193 F.3d 1102, 1105-06 (9th Cir.1999) for the proposition that courts distinguish between "terms of imprisonment" and "detention" (Petitioner's Memorandum Brief, 5). However, the Ninth Circuit expressly rejected such a definitional usage of *Morales-Alejo* in *Pacheco-Camacho,* 272 F.3d at 1269. Petitioner also cites 18 U.S.C. § 4101(b) as "defining 'imprisonment' as a 'penalty imposed by the court under which the individual is confined to an institution" ' and 18 U.S.C. § 3582 (*Id.*). These statutes have little relevance because they have no relationship to the statute at issue. [FN1] A plain reading of § 3624(b) does not make it clear what amount of time should be used as the standard of prorating. *Pacheco-Camacho,* 272 F.3d at 1269. Likewise the language of § 3624(b) is ambiguous as to legislative intent.

> FN1. § 3624, the statute in question, is in Chapter 229, subchapter C. § 4101 is the definitional section of Chapter 306. § 3582 is a statue within Chapter 227, subchapter D.

*3 The second prong of the *Chevron* test requires the court to determine if the regulation is "based on a permissible construction of the statute." *Pacheco-Camacho,* 272 F.3d at 1270 (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct at 2778). This first requires a determination of whether Congress has vested the agency with authority to "elucidate a specific provision of the statute by regulation." *Pacheco-Camacho,* 272 F.3d at 1270 (quoting *Chevron,* 467 U.S. at 843-44, 104 S.Ct at 2778). The statute does not explicitly vest the Bureau of Prisons with such authority, but the authority is implied by the authority to grant good time credits. *Pacheco-Camacho,* 272 F.3d at 1270. Also, the language of §

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22456808, *3 (N.D.Tex.))

3624(b)(1) implicitly charges the Bureau of Prisons with the implementation of prorating. Thus, § 523.20 falls within the implied authority of the Bureau of Prisons and is entitled to judicial deference. *Id.*

A court "may reverse an agency's construction of an ambiguous or silent statute only if [it] find[s] it to be 'arbitrary, capricious, or manifestly contrary to the statute." ' *El Paso Elec. Co. v. F.E .R.C.,* 201 F.3d 667, 670 (5th Cir.2000) (quoting *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2778). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. The court should give the Bureau of Prisons's interpretation great deference. *See, e.g., Sanderson Farms, Inc. v. N.L.R.B.,* 335 F.3d 445, 452 n. 8 (5th Cir.2003).

As related above, the meaning of the statutory language is ambiguous. The Bureau of Prisons's interpretation of the statue is reasonable and is not effected to subvert the will of Congress. *See Pacheco-Camacho,* 272 F.3d at 1270-71 ("This interpretation comports with the statutory language of section 3264(b), and does not subvert the statutory design. It establishes an effective and fair prorating scheme, enabling inmates to calculate with reasonable certainty the end of their imprisonment, while preventing certain prisoners from receiving disproportionate good time credits ..."). Therefore, the court must uphold the Bureau of Prisons's interpretation. *See, e.g., Chevron* 467 U.S. at 844, 104 S.Ct. at 2782 ("Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.")

*Recommendation:*

For the forgoing reasons it is recommended that the § 2241 petition for habeas relief be DENIED.

A copy of this recommendation shall be transmitted to Petitioner and to counsel for Respondent.

*Notice*

**\*4** In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir.1996)(*en banc* ), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.

2003 WL 22456808 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 5

RECEIVED  UNITED STATES DISTRICT COURT    FILED
                  DISTRICT OF CONNECTICUT

    2003 SEP 29 P 12: 38                          2003 SEP 22 P 4: 25

DIANA WEBBATTORNEY'S OFFICE                    .5. DISTRICT COURT.
        HARTFORD, CONNECTICUT                    NEW HAVEN, CONN.
        v.                                       PRISONER
                                    CASE NO. 3:03CV961(PCD)(JGM)

KUMA DEBOO and
KATHLEEN HAWK-SAWYER


                        RULING AND ORDER

    The petitioner, Diana Webb ("Webb"), is currently confined
at the Federal Prison Camp in Pekin, Illinois. She filed this
petition for a writ of habeas corpus, pursuant to 28 U.S.C. §
2241, while she was confined at the Federal Correctional
Institution in Danbury, Connecticut. For the reasons that
follow, the petition is denied.

                      Procedural Background

    On March 9, 1998, Webb was sentenced in the United States
District Court for the Western District of Missouri to a total
effective sentence of 150 months of imprisonment followed by a
five year term of supervised release. She was credited for 284
days of time served prior to sentencing.

    Webb has been credited with 54 days of good time credit for
each of six years: 5/29/97-5/28/98; 5/29/98-5/28/99; 5/29/99-
5/28/00; 5/29/00-5/28/01; 5/29/01-5/28/02; and 5/28/02-5/28/03.
Bureau of Prison ("BOP") projections, assuming Webb will continue
to receive the maximum of 54 days of good time credit for each

full year yet to be served and a pro-rated 48 days of good time credit for the final year, show her release date as April 19, 2008.[1]

## Discussion

Since the enactment of the Judiciary Act of 1789, the federal court in the district in which a prisoner is incarcerated has been authorized to issue a writ of habeas corpus if the prisoner was in custody under the authority of the United States. See Triestman v. United States, 124 F.3d 361, 373 (2d Cir. 1997). Today, this authority is codified at 28 U.S.C. § 2241(c)(3). In 1948, however, Congress enacted 28 U.S.C. § 2255. This statute "channels collateral attacks by federal prisoners to the sentencing court (rather than to the court in the district of confinement) so that they can be addressed more efficiently." Id.

Currently, "[a] motion pursuant to [section] 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001)(citing Chambers v. United States, 106 F.3d 472, 474-75 (2d

---

[1]Webb also is scheduled to receive a one-year sentence reduction for completion of the BOP residential drug and alcohol rehabilitation program. This time is not reflected in the calculations used in this ruling.

2

Cir. 1997) (describing situations where a federal prisoner would
properly file a section 2241 petition)). A section 2255 motion,
on the other hand, is considered "the proper vehicle for a
federal prisoner's challenge to [the imposition of] his
conviction and sentence." Id. at 146-47. Thus, as a general
rule, federal prisoners challenging the imposition of their
sentences must do so by a motion filed pursuant to section 2255
rather than a petition filed pursuant to section 2241. See
Triestman, 124 F.3d at 373.

In her section 2241 petition, Webb challenges the
calculation of good time credit, an issue relating to the
execution of her sentence. Thus, the petition properly was filed
pursuant to section 2241.

Good time credit is awarded pursuant to 18 U.S.C.
§3624(b)(1), which provides:

> [A] prisoner who is serving a term of
> imprisonment of more than one year . . . may
> receive credit toward the service of the
> prisoner's sentence, beyond the time served,
> of up to 54 days at the end of each year of
> the prisoner's term of imprisonment,
> beginning at the end of the first year of the
> term, subject to determination by the Bureau
> of Prisons that, during that year, the
> prisoner has displayed exemplary compliance
> with institutional disciplinary regulations.
> . . . Credit that has not been earned may not
> later be granted. Subject to paragraph (2),
> credit for the last year of portion of a year
> of the term of imprisonment shall be prorated
> and credited within the last six weeks of the
> sentence. . . .

Webb argues that the BOP has incorrectly calculated the

3

maximum amount of good time credit as 588 days, rather than 675 days, the number of days equivalent to fifteen percent of her 150 month sentence. She appears to contend that the BOP should award a total amount of good time credit based upon the length of the sentence imposed and then reduce that total by up to 54 days per year if she has not complied with the requirements of the statute during a particular year of her sentence.

The Ninth Circuit has addressed this exact argument. See Pacheco-Camacho v. Hood, 272 F.3d 1266 (9th Cir. 2001), cert. denied, 535 U.S. 1105 (2002). In that case, the inmate argued that he should have received the full 54 days credit on his sentence of one year and one day, rather than the 47 days resulting from the pro-ration calculation performed by the BOP. He claimed that the reference to "term of imprisonment" in the statute required the BOP to base the calculation of good time credit on the length of the sentence imposed regardless of the time actually served. The court rejected this argument. The court noted the references in the statute to individual years of the term of imprisonment and that fact that, for sentences exceeding one year and one day, the prisoners do not receive any good time credit until they have complied with prison regulations for an entire year. The court concluded that accepting the prisoner's argument would result in a windfall for a prisoner during his last year of imprisonment-he would receive a full 54 days good time credit after serving only 311 days. See id. at

4

1268-69.

This court agrees with the reasoning of the Ninth Circuit. The statute clearly states that an inmate may receive up to 54 days of good time credit after each year of the term of imprisonment. The reference to this annual determination, required that the award be made each year. The records provided by the respondent reveal that Webb has been credited with the full 54 days for each year of her sentence completed thus far. The projections assume that Webb will continue to receive the full amount each year.

In her argument, Webb fails to acknowledge that with each annual award of good time credit, her release date is adjusted. The statute requires that the credit be applied to the portion of the sentence yet to be served. See 18 U.S.C. § 3624(b)(1) ("credit toward the service of the prisoner's sentence, beyond the time served"). To date, she has been awarded 324 days, or nearly eleven months, of good time credit. That time is subtracted from Webb's release date. Because she will not be incarcerated for that eleven months, she will not be eligible to earn good time credit for that period. She cannot receive good time credit for time she did not serve. See Williams v. Lamanna, 2001 WL 1136069 (6th Cir. Sept. 19, 2001) (Section 3624(b)(1) "clearly states that good conduct time is awarded on time served by the inmate, and not on the time that might potentially be served by the inmate"). The court concludes that the BOP's

5

method of calculation of good time credit is consistent with and a reasonable interpretation of the statute.

## Conclusion

The petition for writ of habeas corpus [doc. #1] IS DENIED.

The court determines that no question of substance is presented for appellate review. Thus a certificate of appealability is denied.

SO ORDERED.

Dated at New Haven, Connecticut this _18th_ day of September, 2003.

_____
Peter C. Dorsey
United States District Judge

6

EXHIBIT 6

05/20/2004 08:27 FAX 215 597 4691        BOP NERO LGL SVC        → DEV        ☑002



RECEIVED
MAY 2 0 2003
U.S. ATTORNEY'S OFFICE
CAMDEN, NEW JERSEY 08102

<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

GERALD DE GEROLAMO,                    :

               Petitioner,        :        Civil Action No. 03-139 (FLW)

               v.                :        **OPINION**

K.M. WHITE, WARDEN,                    :

               Respondent.        :

FILED

MAY 2 0 2003

AT 8:30 _____ L
WILLIAM T. WALSH

**APPEARANCES:**

    Gerald DeGerolamo, Petitioner <u>pro se</u>
    F.C.I. Fairton
    #80457-054
    P.O. Box 420
    Fairton, NJ  08320

    Louis J. Bizzarri, Assistant United States Attorney
    Camden Federal Building
    401 Market Street
    P.O. Box 1427
    Camden, NJ  08101
        Attorney for Respondent

**WOLFSON**, District Judge

    Petitioner Gerald DeGerolamo ("DeGerolamo"), a prisoner

currently confined at the Federal Correctional Institution at

Fairton, New Jersey, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent

is Warden K.M. White.

    For the reasons stated herein, the Petition must be denied.

## I.  BACKGROUND

    Petitioner DeGerolamo is currently serving an aggregate 160-

month (13 years, 4 months) sentence imposed by the United States

District Court for the Southern District of New York in three

separate convictions on April 9, 1991, and June 23, 1994.[2]

(Petition ¶ 4.1; Answer at 2, 4-5.)  The Bureau of Prisons

("BOP") has calculated Petitioner's sentence, according to 18

U.S.C. § 3624(b)(1) and BOP Program Statement 5880.28, to reflect

a potential maximum award of 603 days of good time credit,[3] and

_____

[1] Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the
Supreme Court, any justice thereof, the district courts
and any circuit judge within their respective
jurisdictions.
(c) The writ of habeas corpus shall not extend to a
prisoner unless-- .... (3) He is in custody in violation
of the Constitution or laws or treaties of the United
States ... .

[2] Petitioner was on escape status from March 7, 1992 through
April 3, 1993.  (Answer at 4.)

[3] Petitioner has been awarded 54 days of good time credit
for each full year served on his sentence, beginning January 28,
1991, (the date Petitioner was taken into custody in presentence
status), with the exception of the year ended February 24, 1994,
(during which he was on escape status), for which year he was
awarded 27 days credit, a total of 567 days.  It is projected
that if no good time credit is disallowed or forfeited between
February 24, 2003, and the end of his sentence, Petitioner will
be awarded an additional 36 days of good time credit.  (Answer at
6-9.)

has projected a release date of October 31, 2003, if all such

good time credits are awarded. (Pet. ¶ 4.5; Answer at 3.)

Petitioner contends that the BOP's interpretation of

§ 3624(b)(1) is contrary to the unambiguous intent of Congress

and is depriving him of good time credits that should be awarded

under the statute. (Pet. ¶¶ 5.1 - 5.5.) Petitioner contends

that the BOP erroneously calculates the good time credits based

upon time served, rather than upon the sentence as imposed.

(Pet. ¶ 4.4.) He contends that he is entitled to earn a maximum

of 718 days good time credit (54 days per year times 13 and 1/3

years),[4] based upon the sentence imposed. He asks this Court to

order the Bureau of Prisons to recalculate his good time credits

according to what he asserts is the correct interpretation of the

statute.

## II.   ANALYSIS

As of the time of Petitioner's imprisonment, 18 U.S.C.

§ 3624(b) provided:

> A prisoner who is serving a term of imprisonment of
> more than one year, other than a term of imprisonment
> for the duration of his life, shall receive credit
> toward the service of his sentence, beyond the time
> served, of fifty-four days at the end of each year of
> his term of imprisonment, beginning at the end of the
> first year of the term, unless the Bureau of Prisons
> determines that, during that year, he has not
> satisfactorily complied with such institutional
> disciplinary regulations as have been approved by the

-------------------------------------------------------

[4] Fifty-four days/year times 13 years 4 months actually
yields 720 days.

Attorney General and issued to the prisoner. If the
Bureau determines that, during that year, the prisoner
has not satisfactorily complied with such institutional
regulations, he shall receive no such credit toward
service of his sentence or shall receive such lesser
credit as the Bureau determines to be appropriate. The
Bureau's determination shall be made within fifteen
days after the end of each year of the sentence. Such
credit toward service of sentence vests at the time
that it is received. Credit that has vested may not
later be withdrawn, and credit that has not been earned
may not later be granted. Credit for the last year or
portion of a year of the term of imprisonment shall be
prorated and credited within the last six weeks of the
sentence.

18 U.S.C. § 3624(b).[5]

The Bureau of Prisons has codified its interpretation of

§ 3624(b) at 28 C.F.R. § 523.20.

Pursuant to 18 U.S.C. 3624(b), as in effect for
offenses committed on or after November 1, 1987 but
before April 26, 1996, an inmate earns 54 days credit
toward service of sentence (good conduct time credit)
for each year served. This amount is prorated when the
time served by the inmate for the sentence during the
year is less than a full year. The amount to be
awarded is also subject to disciplinary allowance . . . .
. . .

This interpretation is implemented through BOP Program Statement

("P.S.") 5880.28. (Answer, Decl. of Joyce Horikawa, Ex. E.)  The

Bureau of Prisons has determined that "54 days of GCT [("good

conduct time")] may be earned for each full year served on a

_____

[5] Section 3624(b) has since been amended to provide that
credits awarded after the date of enactment (April 26, 1996) of
the Prison Litigation Reform Act (Title VII of Pub. L. 104-134)
shall vest on the date the prisoner is released from custody," 18
U.S.C. § 3624(b)(2), and that "Credit that has not been earned
may not later be granted," 18 U.S.C. § 3624(b)(1).

4

sentence in excess of one year," P.S. 5880.28(g), and has derived
a formula to calculate the amount of GCT that may be earned for
any fractional year served on a sentence in excess of one year.

     For release purposes, subsection 3624(b) is the
most important provision in the computation process
since the proper application of that subsection
determines the actual statutory date of release for the
prisoner. The release date is determined, of course,
by subtracting the total amount of GCT awarded during
the term of the sentence from the full time date of the
sentence. The total amount of GCT awarded during the
term of a sentence is found by adding the amount of GCT
awarded at the end of each year to the amount of GCT
awarded for the last portion of a year.

     As noted in (1) above, 54 days of GCT may be
awarded for each full year served on a sentence in
excess of one year. Since 54 days of GCT per year
cannot be divided evenly into one year, or 12 months,
or 52 weeks, or 365 days, determining the amount of GCT
that may be awarded for the last portion of a year on
the sentence becomes arithmetically complicated. The
BOP has developed a formula (hereinafter called the
"GCT formula") that best conforms to the statute when
calculating the maximum number of days that may be
awarded for the time served during the last portion of
a year on the sentence.

     The GCT formula is based on dividing 54 days (the
maximum number of days that can be awarded for one year
in service of a sentence) into one day which results in
the portion of one day of GCT that may be awarded for
one day served on a sentence. 365 days divided into 54
days equals .148. Since .148 is less than one full
day, no GCT can be awarded for one day served on the
sentence. Two days of service on a sentence equals
.296 (2 x .148) or zero days GCT; ... seven days equals
1.036 (7 x .148) or 1 day GCT. The fraction is always
dropped.

          . . .

     It is essential to learn that GCT is not awarded
on the basis of the length of the sentence imposed, but
rather on the number of days actually served. In other

5

words, when the GCT awarded plus the number of days actually served equals the days remaining on the sentence, then the prisoner shall be released on the date arrived at in the computation process. (days remaining on sentence - (GCT + days served) = release date). ....

P.S. 5880.28(g), Sentence Computation Manual CCCA, at 1-40

through 1-45 (Answer, Decl. of Joyce Horikawa, Ex. E.).

A.    Exhaustion of Administrative Remedies

Respondent asks this Court to dismiss the Petition because

Petitioner has failed to exhaust his administrative remedies.[6]

(Answer at 10-12.)  Petitioner does not deny his failure to

exhaust administrative remedies, but contends that such

exhaustion is not a jurisdictional bar and would be futile, in

that he challenges the validity of the Bureau of Prisons'

interpretation of § 3624.  (Traverse.)

------------

[6] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id.

6

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. <u>See</u>, <u>e.g.</u>, <u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Arias v. United States Parole Comm'n</u>, 648 F.2d 196, 199 (3d Cir. 1981); <u>Soyka v. Alldredge</u>, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

<u>Goldberg v. Beeler</u>, 82 F.Supp.2d 302, 309 (D.N.J. 1999), <u>aff'd</u>, 248 F.3d 1130 (3d Cir. 2000). <u>See also</u> <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. <u>See</u>, <u>e.g.</u>, <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); <u>Carling v. Peters</u>, 2000 WL 1022959,

7

*2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, there is no need to develop a factual record, nor does this matter require application of the agency's particular expertise.  Petitioner does not challenge the application of the agency's regulations to him, but challenges whether the regulation and Program Statement accurately implement the statute pursuant to which they were promulgated.  This is a question within the expertise of courts.  See Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").  Accordingly, the purposes of the exhaustion requirement would not be served by requiring the Petitioner to exhaust his administrative remedies, and this Court will proceed to determine Petitioner's claim on the merits.

B.    The Good Conduct Time Credits

Respondent contends that § 3624 is unambiguous, and the Bureau of Prisons has correctly interpreted the statute and, to the extent the statute can be construed as silent or ambiguous as to the basis for GCT, the Bureau of Prisons' interpretation is reasonable and entitled to deference under the rule of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S.

8

05/20/2004 08:29 FAX 215 597 4691    BOP NERO LGL SVC    → DEV    ☑010

837, 842-43 (1984). (Answer at 18-24.) This Court agrees with

Respondent.

> When a court reviews an agency's construction of the
> statute which it administers, it is confronted with two
> questions. First, always, is the question whether
> Congress has directly spoken to the precise question at
> issue. If the intent of Congress is clear, that is the
> end of the matter; for the courts, as well as the
> agency, must give effect to the unambiguously expressed
> intent of Congress. If, however, the court determines
> Congress has not directly addressed the precise
> question at issue, the court does not simply impose its
> own construction on the statute, as would be necessary
> in the absence of an administrative interpretation.
> Rather, if the statute is silent or ambiguous with
> respect to the specific issue, the question for the
> court is whether the agency's answer is based on a
> permissible construction of the statute.

Chevron, 467 U.S. at 842-43 (footnotes omitted).

Two Circuit Courts of Appeals have addressed the statutory-

construction issue presented here by Petitioner. In Williams v.

LaManna, 20 Fed.Appx. 360, 361, 2001 WL 1136069 (6th Cir. Sept.

19, 2001) (unpubl.), the Court of Appeals for the Sixth Circuit

held that "[t]he statute clearly states that good conduct time is

awarded on time served by the inmate, not on the time that might

potentially be served by the inmate."

The Court of Appeals for the Ninth Circuit did not find the

language so clear. "In this case, the words of the statute do

not provide clear guidance as to what the phrase 'term of

imprisonment' means." Pacheco-Camacho v. Hood, 272 F.3d 1266,

1268 (9th Cir. 2001) (involving a claim by a prisoner sentenced

to a term of imprisonment of one year and one day), cert. denied,

535 U.S. 1105 (2002). The Court further held that the
legislative history did nothing to remove that ambiguity. Id. at
1269. Proceeding to the second step of the Chevron analysis, the
Court found that the language granting the BOP authority to award
or withhold good time credits and providing for proration of the
credit for the last year or portion of a year implicitly charged
the Bureau of Prisons with implementation of the proration
scheme. Id. at 1270. The Court held that the agency's
interpretation of the statute and proration formula were
reasonable, and entitled to deference, in that they prevent
prisoners from receiving a windfall, in the form of full credit
for time they do not serve, and they enable prisoners to estimate
with certainty the time of their release. Id. at 1268-71.

    Finally, the court rejected the prisoner's suggestion that
his interpretation of the statute should be preferred because of
the rule of lenity, which "ensures that the penal laws will be
sufficiently clear, so that individuals do not accidentally run
afoul of them and courts do not impose prohibitions greater than
the legislature intended." Id. at 1271 (citing United States v.
Bass, 404 U.S. 336, 347-48 (1971)). The court noted that the
rule of lenity does not prevent an agency from resolving
statutory ambiguity through regulation. id. (citing Babbitt v.
Sweet Home Chapter of Communities for a Great Oregon, 515 U.S.
687, 705 n.18 (1995)), and held that the BOP's regulation "gives

the public sufficient warning to ensure that nobody mistakes the ambit of the law or its penalties," id. at 1272.

This Court is of the opinion that the language of the statute is not ambiguous and that the BOP regulation and Program Statement correctly interpret and implement the statute. The statute specifically contemplates the award of GCT credit incrementally, in the amount of a maximum of 54 days at the end of each year of the term, and in an amount proportionately less than 54 days for any fractional portion of a year left at the end of the term, taking into account the reductions that have been made incrementally at annual intervals. This is the scheme employed by the Bureau of Prisons and applied here to Petitioner. To the extent the language of the statute could be deemed ambiguous, this Court adopts the reasoning of the Court of Appeals for the Ninth Circuit in Pacheco-Camacho.

## III.   CONCLUSION

For the reasons set forth above, the Petition must be denied. An appropriate order follows.

_Freda L. Wolfson_
Freda L. Wolfson
United States District Judge

Dated: May 20, 2003

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GERALD DE GEROLAMO,                  :
                                                               Civil Action No. 03-139 (FLW)
        Petitioner,           :

        v.                           :     ORDER

K.M. WHITE, WARDEN,                    :

        Respondent.           :

      For the reasons set forth in the Opinion filed herewith,

IT IS on this __20th__ day of ___May___, 2003;

      ORDERED that the Petition is DENIED.

FILED

MAY 20 2003

AT 8:30
WILLIAM T. WALSH

_Freda L. Wolfson_
Freda L. Wolfson
United States District Judge

ENTERED
ON
THE DOCKET

MAY 20 2003

WILLIAM T. WALSH, CLERK

By _____ (Deputy Clerk)

EXHIBIT 7

314 F.Supp.2d 834
(Cite as: 314 F.Supp.2d 834, 2004 WL 877606 (W.D.Wis.))

**H**

United States District Court,
W.D. Wisconsin.

Yancey L. WHITE, Petitioner,
v.
Joseph SCIBANA, [FN1] Respondent.

FN1. In his petition, petitioner identifies the respondent as "Warden Scibana." It has come to my attention that respondent's full name is "Joseph Scibana." I have corrected the caption accordingly.

No. 03-C-581-C.

April 23, 2004.

Background: Prisoner petitioned for writ of habeas corpus, challenging his projected release date on 120-month sentence as improperly calculated.

Holding: The District Court, Crabb, Chief Judge, held that Bureau of Prisons (BOP) must calculate an inmate's good conduct time on the basis of the inmate's sentence rather than on the time he has actually served.

Petition granted.

See also 2003 WL 23171593.

West Headnotes

[1] Prisons ⟨⟩15(4)
310k15(4)

Bureau of Prisons (BOP) must calculate an inmate's good conduct time on the basis of the inmate's sentence rather than on the time he has actually served. 18 U.S.C.A. § 3624(b); 28 C.F.R. § 523.20.

[2] Statutes ⟨⟩219(2)
361k219(2)

Agency's interpretation of federal statute is entitled to no deference if Congress has expressed its intent unambiguously in the statute.

[3] Administrative Law and Procedure ⟨⟩330
15Ak330

Agencies may fill gaps in ambiguous statutes through interpretation; however, they may not contradict a statute's plain language.

[4] Statutes ⟨⟩219(2)
361k219(2)

Court should conclude that a statute is ambiguous and thus open to gap-filling by agencies only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent.

[5] Statutes ⟨⟩205
361k205

Courts must read the statute as a whole to aid in determining the meaning of each of its parts.

[6] Statutes ⟨⟩212.6
361k212.6

Identical words used in different parts of the same statute are presumed to have the same meaning.

[7] Statutes ⟨⟩212.6
361k212.6

Presumption that terms have a consistent meaning throughout a single statute may be overcome.

[8] Statutes ⟨⟩216
361k216

Statements of legislator made after statute was enacted could have only limited probative value in determining its meaning.

[9] Prisons ⟨⟩15(4)
310k15(4)

Bureau of Prisons (BOP) did not have authority to promulgate regulation that used "time served" as opposed to "sentence imposed" as basis for calculating good time credits; phrase "term of imprisonment" in statute permitting an inmate to earn up to 54 days of good conduct time "at the end of each year of the prisoner's term of imprisonment" clearly referred to the prisoner's sentence. 18 U.S.C.A. § 3624(b); 28 C.F.R. § 523.20.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

314 F.Supp.2d 834                                                                                                Page 13
(Cite as: 314 F.Supp.2d 834,  2004 WL 877606 (W.D.Wis.))

West Codenotes

Held Invalid

28 C.F.R. § 523.20

**\*835** Emily M. Feinstein, Quarles & Brady, Madison, WI, for Petitioner.

Steven P. O'Connor, Assistant U.S. Attorney, Madison, WI, for Respondent.

OPINION AND ORDER

CRABB, Chief Judge.

**\*\*1** Under 18 U.S.C. § 3624(b), a federal prisoner may earn up to 54 days of good conduct time for every year of his "term of imprisonment." The question presented in this petition for a writ of habeas corpus is one of first impression in this circuit:  whether § 3624(b) requires the Bureau of Prisons to calculate an inmate's good conduct time on the basis of the inmate's sentence rather than on the time he has actually served.  In an order dated December 22, 2003, I concluded that petitioner Yancey White had raised a substantial question about the bureau's method of calculating good conduct time.  I ordered **\*836** respondent Scibana to show cause why the petition should not be granted.

[1] The parties agree that 28 U.S.C. § 2241 is the proper vehicle for challenging the calculation of good conduct time, *Bell v. United States*, 48 F.3d 1042 (8th Cir.1995), that petitioner has properly exhausted his administrative remedies, *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir.1997), and that this court has jurisdiction to hear the petition. *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-96, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) .   After considering respondent's arguments supporting the bureau's interpretation, I conclude that § 3624(b) is unambiguous:  "term of imprisonment" means "sentence imposed." Therefore, the bureau must calculate an inmate's good conduct time on the basis of his sentence rather than on the time he has served.  In other words, if a prisoner is sentenced to a 10-year term of imprisonment, he may earn up to 540 days of good conduct time in the absence of a disciplinary infraction.  The bureau may not limit the application of good conduct time to the amount of time the inmate has already served.  Accordingly, I will grant

the petition for a writ of habeas corpus and order respondent to recalculate petitioner's good conduct time as § 3624(b) directs.

I find the following facts from the record.

FACTS

Petitioner Yancey White is an inmate at the Federal Correctional Institution at Oxford, Wisconsin.  In August 1996, the United States District Court for the Southern District of Illinois sentenced petitioner to 120 months in prison after he was convicted of three counts of distributing cocaine base.

In March 2003, petitioner filed a request for an administrative remedy, arguing that under 18 U.S.C. § 3624, he was to receive "54 days [of good conduct time] for every year that [he] was given by the sentencing judge." Petitioner believed his projected release date should be December 2004 rather than February 2005 as the Bureau of Prisons had calculated.  The warden denied petitioner's request for an administrative remedy, explaining that
>   54 days of GCT [good conduct time] may be earned for each full year served on a sentence in excess of one year, with the GCT being prorated for the last partial year.  Since you will not be in service of a complete 120 months, you cannot calculate your GCT credits by 120 months by 54 days.  Applying this formula, you are entitled to 470 days GCT for a 120-month sentence.

**\*\*2** The regional director affirmed the warden's decision, writing that § 3624(b) "mandates GCT be awarded on the amount of time actually served, not on the length of the term imposed." Petitioner appealed to the administrator for national inmate appeals, who affirmed, stating that "the Bureau of Prisons computed your sentence as required by the Program Statement 5880.28, *Sentence Computation Manual--CCA* and all applicable statutes."

In December 2003, staff at the prison in Oxford prepared an updated computation for petitioner.  After subtracting 10 days of good conduct time for a rule violation in April 2003, staff calculated that petitioner's projected release date was March 3, 2005.

DISCUSSION

The issue in this case is whether the Bureau of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Prisons' method for calculating good conduct time is consistent with 18 U.S.C. § 3624(b). That section provides:

(b) Credit toward service of sentence for satisfactory behavior.--

(1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a *837 term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term .... Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence. 18 U.S.C. § 3624(b)(1).

The bureau has promulgated a regulation interpreting this provision as awarding good time credit on the basis of "each year served." 28 C.F.R. § 523.20. In Program Statement 5880.28, the bureau has set forth the formula it uses to calculate good conduct time. Under the bureau's formula, an inmate that receives a sentence of one year and one day can earn up to 47 days of good conduct time rather than 54 days.

[2][3][4] When a court reviews an agency's interpretation of a federal statute, the threshold question is whether the interpretation is entitled to deference. The Supreme Court has applied varying levels of deference depending on the context of the interpretation. *E.g., Alaska Department of Environmental Conservation v. EPA,* --- U.S. ----, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) (internal guidance memoranda entitled to "respect" but not "dispositive force"); *Yellow Transportation, Inc. v. Michigan,* 537 U.S. 36, 45, 123 S.Ct. 371, 154 L.Ed.2d 377 (2003) (regulation promulgated after notice and comment entitled to highest level of deference when Congress has expressly authorized agency to promulgate rules). Regardless of the context of the interpretation, the agency is entitled to no deference if Congress has expressed its intent unambiguously in the statute. *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 125-26, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Agencies may fill gaps in ambiguous statutes; they may not contradict a statute's plain language. Further, a court should conclude that a statute is ambiguous

and thus open to gap-filling by agencies "only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *General Dynamics Land Systems, Inc. v. Cline,* --- U.S. ----, 124 S.Ct. 1236, 1248, 157 L.Ed.2d 1094 (2004).

**3 In the December 22, 2003 order, I concluded that the pivotal clause in § 3624(b) is the one stating that an inmate may earn up to 54 days of good conduct time "at the end of each year of the prisoner's term of imprisonment." That clause raised the question whether the phrase "term of imprisonment" means "sentenced imposed" or "time served." If "term of imprisonment" refers to the sentence, an inmate's maximum potential good conduct time could be calculated by multiplying 54 days by the number of years in the sentence. In this case, petitioner would have been eligible to earn up to 540 days against his sentence (54 days x 10 years = 540 days). However, if a term of imprisonment is defined by the inmate's actual time served, the number of good time credits that could be earned would be reduced and a more complicated calculation would be required because an inmate that earns good time will not actually serve his full sentence.

As an initial matter, respondent challenges the conclusion that the case turns on an interpretation of "term of imprisonment." He argues that the phrase establishes only "which federal inmates are eligible to earn good time credits against their sentences in the discretion of the Bureau." Resp.'s Br., dkt. # 15, at 9. Respondent does not develop this argument and I cannot agree with it. It is true that the statute allows good conduct time only *838 for those prisoners serving a term of imprisonment of more than one year. But the statute says also that the inmate may receive 54 days of credit for every "year of the prisoner's term of imprisonment." If "term of imprisonment" means "sentence," an inmate would be eligible to receive good conduct time for each year of his sentence rather than for each year he has served. Thus, I adhere to the conclusion in the December 22 order that the bureau has no authority to calculate credits on the basis of time served if § 3624 unambiguously expresses Congress's intent to define "term of imprisonment" as "sentence imposed."

[5][6] In isolation, the phrase "term of

314 F.Supp.2d 834                                                                          **Page 15**
(Cite as: 314 F.Supp.2d 834, *838, 2004 WL 877606, **3 (W.D.Wis.))

imprisonment" is arguably ambiguous. *See American Heritage Dictionary of the English Language* 175 (4th ed.2000) (defining "term" to mean both "[a] limited period of time" and "a period of time that is assigned to a person to serve"). However, words in a statute are not to be read in a vacuum; courts must read the statute as a whole to aid in determining the meaning of each of its parts. *King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). A corollary to this rule is that identical words used in different parts of the same statute are presumed to have the same meaning. *Gustafson v. Alloyd Co.,* 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

The phrase "term of imprisonment" is used several times in § 3624. None of the other uses supports a "time served" interpretation of "term of imprisonment" and respondent does not argue to the contrary. For example, the first sentence of § 3624(a) provides, "A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited ...." This sentence can make sense only if a term of imprisonment is another way of saying the sentence imposed. If "term of imprisonment" means only the time *actually* served, there would be no need to subtract "time credited" to determine the release date because good conduct time would already be taken into account. This sentence is in essence a calculation for time served: Sentence imposed minus good time credited equals time served. There is no other way to read the provision.

**4 Similarly, the first sentence of § 3624(b) provides that any "prisoner who is serving a term of imprisonment of more than 1 year" may earn good conduct time. (Section 3624(c) also refers to "a prisoner serving a term of imprisonment"). Again, this portion of the statute would make no sense if "term of imprisonment" means the time served. An inmate cannot be "serving" time he has already served. In this context, if Congress had intended "term of imprisonment" to mean "time served," it could have used the clause "a prisoner who *has completed* a term of imprisonment of more than one year." Further, a "time served" interpretation of "term of imprisonment" in this clause would make determining eligibility for good conduct time a perplexing process when the sentence is just over one year. For example, an inmate who would

initially be eligible for good time credit because his sentence was 366 days would become ineligible once his good conduct time was taken into account.

Even the bureau has interpreted the statute as making good conduct time available when the *sentence* is more than a year. *See* Program Statement 5880.28, *Sentence Computation Manual--CCA* (applying good time credit calculation to sentence of one year and one day), *attached to* Aff. of Christine Hine, dkt. # 15. Respondent does not explain why "term of imprisonment" should mean "sentence imposed" in one part of the statute and "time served" in another part.

*839 [7] It is true that the presumption that terms have a consistent meaning throughout a single statute may be overcome, as the Supreme Court reaffirmed recently. *Cline,* 124 S.Ct. at 1245. However, in *Cline,* the Court concluded that Congress did not intend to define the word "age" uniformly throughout the Age Discrimination in Employment Act because "age" has "several commonly understood meanings among which a speaker can alternate in the course of an ordinary conversation, without being confused or getting confusing." *Id.* at 1246. Unlike the word "age," the phrase "term of imprisonment" is not a common term in casual conversation. Rather, it is a legal term of art that Congress has employed in dozens of statutes, many of which were part of the Comprehensive Crime Control Act of 1984, the same act in which § 3624 was included. Throughout these statutes, Congress has uniformly used "term of imprisonment" as a synonym for "sentence." *E.g.,* 18 U.S.C. § 3147 ("A term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment."); 18 U.S.C. § 3156(a)(3) ("The term 'felony' means an offense punishable by a maximum term of imprisonment of more than one year."); 18 U.S.C. § 3582 (discussing "factors to be considered in imposing a term of imprisonment"); 18 U.S.C. § 3584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time ...."); 28 U.S.C. § 994(b) ("If a sentence specified by the guidelines includes a term of imprisonment, the maximum of the range established for such a term shall not exceed the minimum of that range by more than 25 per centum."). It is fair to assume that if Congress had intended to make the calculation for good conduct time contingent on time served rather than the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Page 16

sentence imposed, it would not have used a phrase with such a clear and consistent meaning throughout the United States Code. *Firstar Bank, N.A. v. Faul,* 253 F.3d 982, 990 (7th Cir.2001) ("[W]here a word is given a consistent meaning throughout the United States Code, then the courts assume that it has that same meaning in any particular instance of that word.")

**5 To support the bureau's interpretation of the statute, respondent points to 18 U.S.C. § 4161, which governed calculation of good time credits from 1959 until 1987. Section 4161 provided:

Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, as follows ...

According to respondent, § 4161 required the bureau to calculate an inmate's good conduct time on the basis of his sentence because the statute stated expressly that an inmate who behaves "shall be entitled to a deduction from the term of his *sentence.* " *See also* H.R. Rep. 86-935, *reprinted in* 1959 U.S.C.C.A.N. 2518 (noting that purpose of § 4161 was "to provide for the return to the method of computing good conduct time which was followed between 1902 and 1948," namely, "multiplying the number of months of a sentence as imposed by the court by the appropriate number of days as prescribed in the statute").

[8] Respondent argues that it is indicative of legislative intent that Congress chose to change this language in the new version of the statute, but this argument is not persuasive. Replacing "sentence" with "term of imprisonment" does not evince an intent to change the method for calculating good time credits when Congress has used *840 the terms interchangeably in so many other contexts. If anything, Congress's long history of using an inmate's sentence to calculate good conduct time supports a conclusion that Congress would have been more explicit if it had intended to adopt a different policy. *Firstar Bank,* 253 F.3d at 988 ("The courts presume that Congress will use clear language if it intends to alter an established understanding about what a law means; if Congress

fails to do so, courts presume that the new statute has the same effect as the older version."). (Petitioner also cites statements by Senator Joseph Biden, who co-authored the Comprehensive Crime Control Act of 1984, that § 3624(b) was intended to give inmates good time credit of up to 15% of their sentences. 141 Cong. Rec. S2348-01 (Feb. 9, 1995); 140 Cong. Rec. S12314-01, S12350 (Aug. 23, 1994). However, because both of these statements were made well after § 3624 was enacted, their probative value is limited. *Sullivan v. Finkelstein,* 496 U.S. 617, 628 n. 8, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (noting "difficulties inherent in relying on subsequent legislative history"); *St. Francis Hospital Center v. Heckler,* 714 F.2d 872, 880 (7th Cir.1983) ("[P]ost enactment history is not the surest guide of the legislative intent in initially passing the Act.").)

Neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has held explicitly that § 3624(b) requires the bureau to calculate good conduct time on the basis of the sentence imposed. However, as petitioner points out, the court of appeals has assumed that an inmate may be able to deduct up to 15% of his or her *sentence* by earning good conduct time (54 days is approximately 15% of one year). *E.g., United States v. Martin,* 100 F.3d 46, 47 (7th Cir.1996) (assuming that inmate could earn 4.5 years of good conduct time on 30-year sentence, or 15%); *see also United States v. Prevatte,* 66 F.3d 840, 846 (7th Cir.1995) (Posner, J., concurring) (assuming that inmate can reduce *sentence* through good conduct time by up to 14.7%).

**6 One court has determined that the meaning of "term of imprisonment" in § 3624 is ambiguous. *Pacheco-Camacho v. Hood,* 272 F.3d 1266 (9th Cir.2001). However, in coming to this conclusion, the court did not consider how the phrase was used in the first sentence of § 3624(a) and the first sentence of § 3624(b)(1), as well as in the rest of the criminal code. Moreover, the court did not take into account the history of the statute showing that Congress intended good conduct time to be deducted from an inmate's sentence. In finding the statute ambiguous, the court relied solely on the last sentence of § 3624(b)(1), which states that "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence." The court

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

concluded that a "sentence imposed" interpretation of "term of imprisonment" would be "inconsistent" with a requirement to prorate good time credits during the last year of the term. *Pacheco-Camacho,* 272 F.3d at 1268-69.

I respectfully disagree with the conclusion that § 3624(b)(1) is ambiguous because it requires the last year of the term to be prorated. This requirement would support the bureau's interpretation of the statute only if all prison sentences were imposed in whole years. Because defendants in federal court are sentenced to a term of months rather than years, many sentences will end in a number of months after the last full year. Thus, there is nothing inconsistent between prorating good time for the last year of the term and interpreting "term of imprisonment" to mean the sentence. Regardless of the interpretation of "term of imprisonment," an inmate's good time will have to be prorated *841 when his or her sentence consists of a number of years and some odd months.

In *Pacheco-Camacho,* the court stated that a "sentence imposed" construction would result in a "bonus" to the inmate because he or she will receive credit in advance of earning it. Respondent makes a similar argument. Resp.'s Br., dkt. # 15, at 8 ( ["Petitioner's] proposed calculation allows prisoners to accrue good time credits for time they never serve.") However, this argument has force only if one assumes that the bureau's interpretation is the correct one. If one assumes that "a year" of the "term of imprisonment" is a year of the sentence imposed, then an inmate has completed a year of the term whenever the inmate's time actually served plus good conduct time equals 365 days (*e.g.,* 311 days served + 54 days of good conduct time = 1 year of the term of imprisonment). Thus, the inmate still "earns" all of his good conduct time, but he does so at a faster rate than under the bureau's interpretation of the statute.

Finally, the Court of Appeals for the Ninth Circuit cited *United States v. Johnson,* 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), to support its conclusion that § 3624(a) does not inform the proper interpretation of § 3624(b). The court's reliance on *Johnson* is puzzling. In that case, the Supreme Court recognized only that under § 3624(e), a "term of supervised release" cannot begin until the inmate has been released from confinement. *Johnson,* 529

U.S. at 58-59, 120 S.Ct. 1114. It did not consider the correct interpretation of the phrase "term of imprisonment" or suggest that words in § 3624 have different meanings in different parts of the statute. Thus, *Johnson* is not instructive in this case.

**7 Respondent makes one other argument not raised by the court in *Pacheco-Camacho:* adopting petitioner's interpretation of § 3624(b) would be contrary to Congress's intent to give the bureau discretion in awarding good conduct time. He relies on *Lopez v. Davis,* 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), in which the Supreme Court concluded that the bureau had discretion under 18 U.S.C. § 3621(e)(2)(B) to deny a sentence reduction because the statute provides that the bureau "may" reduce sentences under particular circumstances. Respondent notes that § 3624(b) has a similar provision that an inmate "may" receive up to 54 days of credit for each year of the term of imprisonment.

Respondent confuses two very different issues. There is no question that the bureau has discretion to deny good conduct time when it concludes that the inmate's behavior does not warrant it. Petitioner acknowledges that discretion. He is not challenging the bureau's decision to disallow 10 days of good conduct time after he was found guilty of a rule violation. However, discretion in *granting* good conduct time does not translate into discretion for choosing the method for *calculating* good conduct time. The statute does not say that the bureau "may" calculate good conduct time in any way it wants. Rather, the statute uses the phrase "term of imprisonment" as the basis on which good conduct time must be calculated.

[9] As noted above, an agency does not have discretion to interpret a statute that is unambiguous. Because I have concluded that Congress had the unambiguous intent to define the phrase "term of imprisonment" to mean "sentence imposed," I conclude that the bureau did not have authority to promulgate a regulation that uses "time served" as the basis for the calculation. The petition must be granted.

## ORDER

IT IS ORDERED that petitioner Yancey White's petition for a writ of habeas *842 corpus under 28

314 F.Supp.2d 834
(Cite as: 314 F.Supp.2d 834, *842, 2004 WL 877606, **7 (W.D.Wis.))

U.S.C. § 2241 is GRANTED. Respondent Joseph Scibana is directed to recalculate petitioner's good conduct time on the basis of each year of his *sentence* rather than on time actually served.

314 F.Supp.2d 834, 2004 WL 877606 (W.D.Wis.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works